NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-940

SANDRA F. CORREIA

vs.

NANCY SHEEHY & others.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The board of appeal of Boston (board) granted relief from the Boston zoning code (code) in the form of two variances to the defendants, Nancy Sheehy and Stone Bridge Partners, LLC (collectively, Sheehy).  The variances would have permitted, pending favorable resolution of certain other issues, the construction of a three-story, two-family residential building on an undersized lot located at 25 Doris Street in the Dorchester section of Boston.  The lot directly abuts the property owned by the plaintiff, Sandra F. Correia, and her

---

[1] Stone Bridge Partners, LLC, and the board of appeal of Boston.

brother.[2]  Correia appealed from the board's decision pursuant to section 11 of the Boston zoning enabling act (enabling act). See St. 1956, c. 665, § 11, as amended through St. 1993, c. 461, § 5.  Following a bench trial in the Superior Court, a judge vacated the board's decision after determining first, that Correia had standing to pursue a zoning challenge and second, that the board had exceeded its authority in granting the variances because, among other things, there is nothing peculiar about the lot other than that it is undersized.[3]  On appeal, Sheehy challenges the judge's finding that Correia has standing and argues that, even if she did, the board's decision should be affirmed because it was not "unreasonable, whimsical, capricious or arbitrary" (citation omitted).  Bateman v. Board of Appeals of Georgetown, 56 Mass. App. Ct. 236, 242 (2002).  We conclude that the judge correctly found that Correia has standing and correctly concluded that the board's decision granting the variances was improper.

Background.  We summarize the judge's findings of fact, all of which are fully supported by the evidence.  In 2018, Sheehy,

_____

[2] The brother is not a party to this action.

[3] The judge also ruled that Sheehy's two lots had merged and when considered as one lot still remained nonconforming with respect to the proposed project.  Sheehy does not challenge this ruling on appeal.

2

a real estate investor, purchased two adjoining lots located at 25 and 27 Doris Street.  The lots have been under common ownership and conveyed together on multiple occasions for over one hundred years.[4]  Consistent with this history, the lots were conveyed to Sheehy by a single deed on October 13, 2018, for the sum of $1.4 million.  The lot designated as 27 Doris Street is enhanced by a three-family triple decker residence, which is typical of the neighborhood.  The lot designated as 25 Doris Street is enhanced by a three-bay parking garage with a curb cut.  The garage historically provided parking for the triple decker at 27 Doris Street, but that changed after Sheehy purchased the property and the garage is now used for storage with no parking allowed.  Individually considered, both lots are nonconforming insofar as both are undersized.  Each lot contains 2,210 square feet of land area, and although the surrounding lots are of a similar size, art. 65, § 65-9, of the code requires a minimum lot size of 3,000 square feet for a residential dwelling.[5]  Thus, any construction of a residential

_____

[4] Deeds from 1906, 1920, 1927, 1943, 1958, 1966, 1998, and 2018 convey the two lots together.

[5] As the judge explained, Doris Street sits within a 3F-D-3000 zoning subdistrict under art. 65, the Dorchester neighborhood zoning article.  The proposed construction is considered as "any other dwelling or use" under that provision.  Because the proposed structure has two dwelling units, the code requires an additional lot area of 1,500 square feet on top of the minimum 3,000 square foot requirement.  Sheehy argued that

3

dwelling on 25 Doris Street would require a variance from the board due to insufficient lot size.

Correia and her brother own a triple decker residence located at the corner of Doris Street and Dorchester Street (1087 Dorchester Street). The property directly abuts 25 Doris Street. Correia's brother and his family reside on the first floor, which has an address of 21 Doris Street. Correia's parents reside on the second floor, and Correia lives with her children in the third-floor unit. Correia has lived at 1087 Dorchester Street since 1993 with the exception of one five-year period between 2007 and 2013. The lot size of 1087 Dorchester Street is 2,015 square feet. The judge, who took a view of the properties, found that the back porches on the second and third floors of 1087 Dorchester Street look out over the garage at 25 Doris Street and "receive sunlight and air."

After acquiring the two lots, Sheehy nominally transferred them to entities she controls: 25 Doris Street was transferred to Stone Bridge Partners, LLC, and 27 Doris Street was transferred to Rock Hill Partners, LLC. Thereafter, Sheehy

---

under art. 65, § 65-42.13, of the code, two dwellings are permitted on one lot. The judge correctly rejected this argument because even if the lots are combined, they would have a total of only 4,420 square feet and the code would require an additional 4,500 square feet (or 7,500 square feet) to accommodate a second dwelling. Thus, under either scenario, a variance would be required for the project to proceed.

4

considered various construction designs for multifamily dwellings and sought input from the community.  Correia attended at least one community meeting.[6]  Eventually, a plan for a two-family structure with a parking garage on the ground level was rejected by the city of Boston inspectional services department.  Sheehy then received a zoning code refusal letter citing violations of the lot size requirements of art. 65, § 65-9, with regard to that proposal.  The letter stated the residential dimensional regulations prohibited the proposed two-family dwelling as such a residence would require a minimum 3,000 square foot lot size, or an additional 1,500 square feet if the two lots were considered merged.  Sheehy filed an appeal with the board in which she sought zoning relief in the form of two variances in connection with the residential dimensional requirements described above.  Following an abutter's meeting, which Correia attended, Sheehy's request for zoning relief was allowed.  The board held that

> "the 2,210 square feet lot size of 25 Doris Street was 'not an atypically sized lot in the neighborhood in question,' and 'the majority of abutting and surrounding lots are of a similar lot, making it not unreasonable to allow for the construction of an [sic] proposed use that otherwise meets all Code requirements, and further making the requested relief reasonable in light of the size and shape of the

_____

[6] At that meeting, Correia expressed her preference for an elevated single-family home with parking available for the neighborhood.  However, Correia's preferences have no bearing on the issues before us.

lot, and massing and density levels in the surrounding neighborhood, and in light of the fact it is the minimum relief necessary to accomplish the goal of reasonably developing the property and creating two new dwelling units.'"

As previously noted, Correia appealed from the board's decision. After a trial, the judge rejected Sheehy's claim that Correia lacked standing to pursue an appeal. Referring to well-settled case law, including 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 700 (2012),[7] the judge reasoned that Correia, as a direct abutter of 25 Doris Street, was entitled to a rebuttable presumption that she is an "aggrieved" person under the enabling act.[8] The judge explicitly found that Sheehy had failed to rebut Correia's presumed standing noting that "[b]ased on the plans, the lot sizes, and the geography of Doris Street and Dorchester Street, the

_____

[7] Sheehy makes much of the fact that the judge did not specifically refer to Murchison v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209 (2020), in her analysis. As best as we understand her argument, Sheehy asserts that Murchison, a case involving standing in a residential zone requiring three-acre lots and lot widths of 250 feet, see id. at 211 n.5, sets forth a higher bar to establish standing than previous cases. We do not agree with that assertion and reject out of hand any suggestion that the judge misapprehended the law on standing.

[8] As the judge noted, and the parties agree, the enabling act uses the same language to confer standing as G. L. c. 40A, § 17, and although that statute does not apply in Boston, our cases interpreting it are applicable to decide standing issues under the enabling act. See Porter v. Board of Appeal of Boston, 99 Mass. App. Ct. 240, 241 (2021); Sherrill House, Inc. v. Board of Appeal of Boston, 19 Mass. App. Ct. 274, 275 (1985).

proposed construction would impact the light and air flow of 1087 Dorchester Street."  And, "[t]he addition of two living units, if occupied by residents with motor vehicles, would impact the available parking on Doris Street."

The judge then determined that even if Sheehy had presented evidence to rebut Correia's standing, Correia had established standing because the loss of light and air and decreased parking availability, both of which are interests protected by the enabling act, were harms that had a direct adverse effect on her.[9]  More specifically, regarding the loss of light and air, the judge found that Correia had provided "ample evidence" to show that the proposed dwelling will be located "about only ten feet away" from Correia's deck.  The proximity of the structure itself supported Correia's allegation that she would suffer from reduced light and air due to the proposed construction.[10]  With

_____

[9] See St. 1956, c. 665, § 2.

[10] Neither party submitted expert testimony or professionally conducted studies regarding the impact of the proposed structure on air flow or parking availability.  To the extent Sheehy faults Correia for not presenting any expert testimony, her claim is unavailing.  "While expert testimony may sometimes be required in a particular case, we have never held that it is always required."  Jepson v. Zoning Bd. of Appeals of Ipswich, 450 Mass. 81, 91 n.13 (2007), quoting Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 723 (1996).  We note that Correia has lived in her home for decades and the judge was entitled to rely on her knowledge and experience as well as the view the judge took in reaching her conclusions.  See Talmo v. Zoning Bd. of Appeals of Framingham, 93 Mass. App. Ct. 626, 629 n.5 (2018) (judge may base factual findings on

7

regard to the parking issue, the judge found that Doris Street is a narrow street with limited on-street parking space and the addition of two living units, if occupied by residents with motor vehicles, will further diminish available parking on Doris Street. See Marashlian v. Zoning Bd. of Appeals of Newburyport, 421 Mass. 719, 723 (1996) (plaintiffs had standing to challenge project where they showed they currently used public street parking to meet business and personal needs and project would cause loss of public spaces).

After concluding that Correia had standing, the judge turned to the question whether the board erred in granting the variances and concluded that Sheehy had not met her burden of proving her entitlement to the variances because she had not met the conditions specified in art. 7, § 7-3, of the code. Under that provision, a variance may be granted only if three conditions have been met.[11] The judge concluded that Sheehy had

_____

standing on information properly acquired on view, including observations of distance between properties).

[11] As relevant here, art. 7, § 7-3, of the code provides as follows:

"(a) That there are special circumstances or conditions, fully described in the findings, applying to the land or structure for which the variance is sought (such as, but not limited to, the exceptional narrowness, shallowness, or shape of the lot, or exceptional topographical conditions thereof) which circumstances or conditions are peculiar to such land or structure but not the neighborhood, and that said circumstances or conditions are such that the

8

not met the conditions set forth in subsections (a) or (b) because she 1) failed to demonstrate that there are "special circumstances or conditions" that apply to 25 Doris Street that are peculiar to it but not the neighborhood, and 2) did not show that she will suffer a "demonstrable and substantial hardship" other than a financial hardship if she could not build the proposed building.  Accordingly, the judge decided that the board had exceeded its authority in granting the variances and vacated the board's decision.[12]

---

application of the provisions of this code would deprive the appellant of the reasonable use of such land or structure;

"(b) That, for reasons of practical difficulty and demonstrable and substantial hardship fully described in the findings, the granting of the variance is necessary for the reasonable use of the land or structure and that the variance as granted by the Board is the minimum variance that will accomplish this purpose; [and]

"(c) That the granting of the variance will be in harmony with the general purpose and intent of this code, and will not be injurious to the neighborhood or otherwise detrimental to the public welfare . . . ."

[12] Given the judge's conclusion, she declined to address issues concerning a "conditional use permit," ruling that because 25 Doris Street was "undersized, Defendants need both a size variance and a permit for conditional use to build their proposed dwelling.  As the Court is vacating the zoning board's grant of the variance, the defendants cannot build the proposed dwelling.  Therefore, the validity of the conditional use permit is moot."  Because we have reached the same conclusion as the judge, we too decline to address the issue.

Discussion.  In conducting our review of the judge's

decision, we defer to her factual findings unless clearly

erroneous.[13]  See Grady v. Zoning Bd. of Appeals of Peabody, 465

Mass. 725, 728 (2013).  We review her determinations of law de

novo but remain "highly deferential" to the board's

interpretation of its own ordinances (citation omitted).  Id. at

729.

> "For [Correia] to have standing under G. L. c. 40, § 17, or
> under § 11 of the enabling act, she must qualify as a
> 'person aggrieved' by the zoning board's decision.  A
> 'person aggrieved' is one who suffers a nonspeculative
> infringement of [her] legal rights.  As an abutter,
> [Correia] was entitled to a presumption of standing."
> (Quotations and citations omitted.)

Sheppard v. Zoning Bd. of Appeal of Boston, 74 Mass. App. Ct. 8,

11 (2009).

---

[13] Although Sheehy asserts the judge relied on clearly erroneous facts in reaching her conclusion that Correia has standing, she does not direct our attention to any.  Her arguments concern the weight of the evidence and not whether the evidence supports the judge's findings.  For example, the judge found that the proposed dwelling will be situated only ten feet from Correia's deck.  Sheehy does not dispute this fact, rather she argues that this finding is "especially troubling" because the setback requirement is five feet.  The two have little to do with each other.  It matters not that the proposed structure meets set back (or height) requirements, the issue is whether Correia's protected interest in light and air will be reduced by construction of the building itself on an undersized lot.  Cf. Bjorklund v. Zoning Bd. of Appeals of Norwell, 450 Mass. 357, 357-358 (2008) (proposed reconstruction of single-family residence, which satisfied all dimensional requirements in town's zoning bylaw except the required minimum lot size, increased nonconforming nature of structure).

10

Sheehy acknowledges that Correia is a direct abutter but argues that she rebutted Correia's presumed standing based on her testimony at trial and on the testimony solicited from Correia during cross-examination. However, other than making bald assertions that she presented evidence and that Correia's testimony was based on speculation, Sheehy has not pointed to any specific testimony to support her position. Put simply, we do not agree with Sheehy's view that Correia's claims are "flimsy and hollow" where, as here, it is undisputed that the proposed three-story structure will sit approximately ten feet from Correia's deck and, presuming that the residents will own motor vehicles, it is evident that additional living units will limit available parking -- particularly where prior to Sheehy's ownership, the property was used for parking.

In any event, as the judge noted, even if Sheehy had successfully rebutted Correia's presumption of standing, thereby placing the burden on Correia to "show that the zoning relief granted adversely affected [her] directly and that [her] injury is related to a cognizable interest protected by the applicable zoning law" (citation omitted), Sheppard, 74 Mass. App. Ct. at 11, Correia met her burden. See Dwyer v. Zoning Bd. of Appeals of Walpole, 73 Mass. App. Ct. 292, 295 (2008).

First, there is no dispute that adequate access to "air and light" and parking are protected interests under the enabling

11

act.  See Murchison v. v. Zoning Bd. of Appeals of Sherborn, 485 Mass. 209, 214 (2020) (parking "typical" interest protected by zoning regulations [citation omitted]); Epstein v. Board of Appeal of Boston, 77 Mass. App. Ct. 752, 757 (2010) (light and air protected by enabling act).  Here, the judge found that the proposed construction will directly affect Correia by reducing her access to light and air and while access to parking is an issue that affects all residents who park on the street, the exacerbation of the parking problem also affects Correia directly.  As the judge aptly observed, Correia's "property is adjacent to 25 Doris Street and will be impacted directly by [Sheehy's] proposed construction."  Given these circumstances, we conclude that the harms alleged by Correia are not "minimal or slightly appreciable" and that the injury to her is "special and different from the concerns of the rest of the community" (citations omitted).  Murchison, supra at 215.

Next, Sheehy argues that the judge's decision to vacate the board's decision was, as a matter of law, error because the decision was not "unreasonable, whimsical, capricious or arbitrary" (citation omitted).  Bateman, 56 Mass. App. Ct. at 242.  This argument ignores Sheehy's failure to meet the conditions set forth in art. 7, § 7-3 (a) and (b), of the code. Subsection (a) requires that the applicant, here Sheehy, demonstrate that there are special circumstances or conditions

12

"such as, but not limited to, the exceptional narrowness, shallowness, or shape of the lot, or exceptional topographical conditions" peculiar to the lot (or structure) "but not the neighborhood" (emphasis added).  Here, there is no evidence that any such circumstance or condition peculiar to 25 Doris Street exists.  It is undisputed that the lot is a regular rectangular shape with no unusual topographical conditions.  Indeed, Sheehy acknowledges, as she must, that the other lots in the neighborhood are of similar size and shape.  The only problem with the lot is that it is undersized.  However, size by itself is not a proper basis for granting a variance.  See Sheppard v. Zoning Bd. of Appeal of Boston, 81 Mass. App. Ct. 394, 399 (2012) ("under the express terms of the Boston zoning code [art. 7, § 7-3], the lot's dimensional limitations cannot serve as the basis for a variance").  Sheehy's claim that the code allows for variances for "special conditions" not limited to soil conditions, shape, or topography, may well be true, but she has identified no "special conditions" here other than size of a lot and a failure to develop the lot before it merged with 27 Doris Street for zoning purposes many years ago.  See Sheppard, supra.  We therefore agree with the judge that the conditions of subsection (a) were not met in this case.

Although failure to meet one of the three conditions set forth in art. 7, § 7-3, of the code is sufficient to defeat the

13

grant of a variance, here Sheehy has also failed to meet the condition set forth in subsection (b). That subsection prohibits the grant of a variance unless doing so "is necessary for the reasonable use of the land or structure." While the construction of a two-family residential dwelling may be more attractive and lucrative from Sheehy's perspective, and while we recognize that the proposed building would be harmonious with the character of the neighborhood, neither circumstance justifies a variance in this case. As the judge found, financial hardship alone cannot satisfy the condition of subsection (b).[14] Furthermore, as the judge also found, there is a preexisting reasonable use for 25 Doris Street; that is, to use it, as it had been used before Sheehy purchased it, as an accessory parking lot for residents of the triple decker on 27 Doris Street. Because the two lots have been merged, see note 3, supra, 25 Doris Street may be used for accessory parking without violating the code's prohibition against using the lot for public parking. Because art. 65 of the code specifically allows for the building of a triple decker and accessory parking

---

[14] It is well settled that a variance is tied to the physical property and the circumstances attendant to it, not the personal circumstances of the property's owner. In other words, zoning variances run with the land, not the owner. See Huntington v. Zoning Bd. of Appeals of Hadley, 12 Mass. App. Ct. 710, 716 (1981). See also Sheppard, 81 Mass. App. Ct. at 399 n.9.

on one lot, Sheehy has a reasonable use for her property.[15]  In short, Correia has standing and because Sheehy did not meet the conditions required by the zoning code to receive a variance, she was not entitled to one.  Accordingly, the judge correctly vacated the board's decision granting the variance.

Judgment affirmed.

By the Court (Blake, C.J.,
Vuono & Neyman, JJ.[16]),

*Paul Little*

Clerk

Entered:  July 13, 2026.

---

[15] That the two lots are now owned by separate entities, one of which, Rock Hill Partners, LLC, the nominal owner of 27 Doris Street, is not a party to this action has no bearing on our conclusion that 25 Doris Street could be used for accessory parking.

[16] The panelists are listed in order of seniority.

15